# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-45


STATE OF LOUISIANA

VERSUS

EDWARD CHARLES JACKSON


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 282,528
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Shannon J. Gremillion, Judges.

**AMY, J., concurs in part, dissents in part, and assigns reasons.**


**CONVICTION AND SENTENCE FOR POSSESSION OF A FIREARM BY A CONVICTED FELON AFFIRMED. ARMED ROBBERY CONVICTION IS REVERSED AND THE HABITUAL OFFENDER ADJUDICATION AND SENTENCE IMPOSED ARE SET ASIDE; JUDGMENT OF ACQUITTAL ENTERED ON THE ARMED ROBBERY CONVICTION.**


James C. Downs
District Attorney - 9th Judicial District Court
701 Murray Street
Alexandria, LA 71301
Telephone: (318) 473-6650
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

**Mark Owen Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457**
**Telephone:  (318) 572-5693**
**COUNSEL FOR:**
      **Defendant/Appellant - Edward Charles Jackson**

**Edward Charles Jackson**
**Louisiana State Prison**
**Camp C Jaguar 3/R**
**Angola, LA 70712**

**THIBODEAUX, Chief Judge.**

The Defendant, Edward Charles Jackson, appeals his bench trial convictions for armed robbery and possession of a firearm by a convicted felon. He was initially sentenced to concurrent ten-year terms at hard labor without the benefit of probation, parole, or suspension of sentence on each conviction. Upon finding the Defendant a fourth felony offender, the trial court vacated the armed robbery sentence and imposed a ninety-nine year sentence at hard labor on the armed robbery conviction.

The Defendant's motion for a new trial was denied as untimely.

We reverse the Defendant's armed robbery conviction because the State failed to prove beyond a reasonable doubt the element of taking. We consequently set aside and vacate the habitual offender adjudication and sentence imposed on the armed robbery conviction and enter a judgment of acquittal. We affirm the Defendant's conviction and sentence on the possession of a firearm by a convicted felon charge.

## ISSUES

We shall consider whether:

(1)     the State presented insufficient evidence to convict the Defendant of armed robbery and possession of a firearm by a convicted felon; and,

(2)     the trial court erred in denying the Defendant's motion for a new trial based upon newly discovered evidence as untimely.

## LAW AND DISCUSSION

### *Insufficiency of the Evidence*

The Defendant asserts insufficient evidence was presented by the State to prove that he committed armed robbery or possession of a firearm by a convicted felon.

The analysis for such claims is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The victim, Kenneth Williams, and the Defendant, both from the New Orleans area, were staying at the Crown Hotel in Alexandria, Louisiana, due to Hurricane Katrina. The Defendant had given Mr. Williams a haircut, and Mr. Williams owed the Defendant money for his service. The testimony is undisputed that on November 18, 2005, the victim went to the Defendant to pay him and the Defendant took the money.

2

Officer Danny Davis and Officer Keith Mouliere of the Alexandria Police Department were dispatched to the Crown Hotel on November 18, 2005, regarding an armed robbery. When the officers arrived, another officer was at the hotel, Officer Stephens. According to Officer Davis, Officer Stephens was talking to the victim.

After receiving information that the suspect had entered room 511, the officers proceeded to the room. As they approached the door, the Defendant stepped out. According to Officer Davis, the Defendant began telling them what happened and Officer Mouliere stopped him to advise him of his *Miranda* rights.

Officer Davis testified in pertinent part that: "[h]e advised that the reason he had taken the money . . . was because the victim had owed him money for a haircut" and "he advised us that he had taken money from the victim, and the reason he had taken the money was because the victim owed him money for a haircut and refused to pay." Officer Davis testified he asked the Defendant if he could search the hotel room and the Defendant consented. Inside the room, the officer picked up the lid of a bar-b-que pit. Under the lid was a box of Smith and Wesson 32 rounds. According to the officer, once the Defendant saw the ammunition had been found, he informed him where a handgun was located in the room. The officer found the handgun in the top left hand dresser drawer. During Officer Davis's testimony the following exchange occurred:

> Q    Did he make any references to whether or not the gun was used by him or not by him as far as the offense was concerned?
>
> A    He made a statement that that was the gun that he had used, and told us where it was at.
>
> Q    Did he explain to you why he did what he did?

A       He stated that it was because the victim had owed him money for haircuts and would not pay.

Officer Mouliere testified that when asked what happened the Defendant replied, "[l]ook, that guy owed me nine dollars . . . . [S]o I took his money." Officer Mouliere stated after the gun was located in the Defendant's room the Defendant explained, "Well, he gave me nine dollars, and I knew I wasn't going to get paid, so I took my money." During the trial, Officer Mouliere was asked "Did he say with the gun or not [sic], without the gun?" and he responded, "He said 'I took my pistol, and I got my money.'"

At the conclusion of the trial, the trial judge found the Defendant guilty of both charges and on the armed robbery conviction set forth the following reasons:

> The question is armed robbery charge, and my concern is that the victim in this case, his testimony, well, it leaves a lot to be desired, I guess you would say. Uh, but it -- the problem that I have is it corroborates -- the defendant helps corroborate his testimony. The police were called to the scene, and the information they get is that there has been a problem between Mr. Jackson and Mr. Williams, and the problem involves a debt that is owed supposedly by Mr. Williams to the defendant, Mr. Jackson. Uh, Mr. Jackson, uh, confirms that. He said that there was some money owed. And, uh, the -- Mr. Jackson says that Mr. -- I'm sorry, Mr. Williams says that Mr. Jackson used a gun to take $300 from him. Uh, I don't think that Mr. Williams had $300. He only owed him $8. I don't understand why he didn't pay him, but for some reason he didn't. But, uh, he tells the story that Mr. Jackson did rob him of some money, uh that apparently he owed him. The police knock on the door of Mr. Jackson and [sic] seems a little surprised and wants to explain to them, uh, what happened. He's kind of surprised because, uh I really believe he doesn't think it's a problem to rob somebody that owes you some money. Uh, the first thing that he said to them was that, yeah, I did get, I did use the gun to get the money the victim owed me. I mean he told the police because he didn't think anything was wrong with that, I guess. The second statement was, he would not have done this had the complainant paid him. Uh, that verifies much of what the victim said and also what the police said, and the defendant, um, confirms their testimony. I mean, it's

4

all corroborated by those two statements that he made. I do not believe that the police officers made that up. I do not believe that the police officers have forged his name on the consent to search form. Uh, and so, when you consider that -- the testimony of the police officers whose testimony I believe to be credible.

Uh, the limited testimony that I received from Mr. Williams, most of which was not credible, and when you consider the testimony of Mr. Jackson, who I've determined is not to be credible. And, he's not credible because he said the police officers forged his name, and the police officers did this and that, which I don't believe. That makes his testimony completely incredible, and so, uh, I just find that if you look at all the things, all the testimony by each of the witnesses, that the credible evidence is that there was an armed robbery, and that the defendant did use the gun, State's 1, to get the money that the victim owed him. And, it wouldn't have happened if he would have just paid him. So, there is no self-help in Louisiana. You cannot get a gun to collect a debt. Well, I should say, in Louisiana, except for New Orleans, you can't do that. Um, and, so, I'm going to find the defendant guilty of not only the armed robbery but also of the being a convicted felon in possession of a firearm.

### Possession of a Firearm by a Convicted Felon

The Defendant argues the police found the gun in his hotel room. The Defendant asserts the State failed to exclude the reasonable hypothesis that the gun belonged to someone else living in the hotel room. The Defendant explains there was no evidence presented that he was the sole occupant of the hotel room. Additionally, the Defendant states that the police did not see him with the gun and his fingerprints were not on the gun or ammunition.

In *State v. Melbert*, 546 So.2d 948, 950 (La.App. 3 Cir. 1989), this court explained in pertinent part:

The essential elements of the crime of possession of a firearm by a convicted felon are: (1) status as a convicted felon; (2) an instrumentality defined as a firearm; and, (3) physical and/or constructive possession of the firearm by the defendant. *State v. Mose*, 412 So.2d 584 (La.1982).

5

> Constructive possession is sufficient to satisfy the possessory element of the offense. *State v. Day*, 410 So.2d 741 (La.1982). Constructive possession is established if the weapon is subjected to the person's dominion and control even if it is only temporary in nature and even if control is shared. *State v. Bailey*, 511 So.2d 1248 (La.App. 2d Cir. 1987).

The Defendant does not contest his status as a convicted felon; he challenges whether or not the State presented sufficient evidence that he was in possession of the gun.

The testimony at the trial indicated no fingerprints "of value" were lifted from the gun or the ammunition. Testimony by Officer Stephen Constantino of the Alexandria Police Department indicated a trace on the gun did not reflect the gun was stolen and did not indicate the ownership of the gun. Additionally, the Defendant testified in pertinent part: "I've never owned up to no gun. I never admit [sic] to having no gun." When asked if there were cartridges in the bar-b-que pit which was in his room, the Defendant responded "Not to my knowledge." When asked if the gun found in the dresser was his gun, the Defendant responded, "No, sir." No testimony or evidence was submitted indicating another person occupied the hotel room with the Defendant.

The undisputed testimony of the officers indicates a handgun was found in the top left hand dresser drawer in the Defendant's room. Officer Davis testified the Defendant pointed out the location of the gun. The State introduced the handgun into evidence. Additionally, the Defendant testified that on the day of the incident, there was no one else in his hotel room when he had the encounter with the victim.

Consequently, based upon the fact that the gun was found in the hotel room, which the Defendant occupied, buttressed with the testimony of Officers Davis and Mouliere that the Defendant pointed out the location of the handgun and the

handgun was found in that location, we conclude sufficient evidence was presented by the State to convict the Defendant of possession of a firearm by a convicted felon.

### *Armed Robbery*

The Defendant argues that the State presented insufficient evidence to support a conviction of armed robbery. He asserts the victim claimed that $300 was taken from him. The trial court found this allegation to be false. The Defendant admits receiving $8 from the victim, but this was payment for a haircut. The Defendant pulled a gun on the victim after he had possession of the $8.

The State counters even if the victim owed a debt to the Defendant, the Defendant had no right to "take a gun, point it at the victim, and demand payment."

> To convict a defendant of armed robbery, the state is required to prove: (1) a taking (2) of anything of value (3) from a person or in the immediate control of another (4) by the use of force or intimidation (5) while armed with a dangerous weapon. La.R.S. 14:64; *State v. Jeselink*, 35,189 (La.App. 2d Cir. 11/2/01), 799 So.2d 684.

*State v. McGinnis,* 07-1419, p. 11 (La.App. 3 Cir. 4/30/08), 981 So.2d 881, 890 (quoting *State v. Ellis*, 42, 520, pp. 4-5 (La.App. 2 Cir. 9/26/07), 966 So.2d 139, 144).

In this case, the trial court did not believe $300 was taken, but it believed some amount was taken. However, reviewing the facts of the case in the light most favorable to the prosecution, the question arises whether or not the State proved beyond a reasonable doubt there was a "taking" as contemplated by La.R.S. 14:64.

The victim testified "I went to give him, give him the money. . . . [I]nstead of him asking me for the money, I went to pull the money out and pay him, and he told -- pulled a gun out and told me to get the hell on . . . ." When asked did he "take" anything, the victim responded he took "my money." However, the victim acknowledged that he owed the Defendant $8.00. When asked if he paid the

Defendant the eight dollars, the victim responded, "[H]e didn't give me a chance to pay him." When the victim was asked why he was by the Defendant's room, he responded, "I was going to pay him. . . I told you I went to pay him." When asked by the State, "Are you sure this is the guy that robbed you with a . . . gun[,]" the victim responded, "Yes, sir."

The Defendant testified that the victim came to him and told him "here go $2.00 on his bill, he owed me $10.00 for a haircut. He told me, here go $2.00 on his bill, could I get him anything for $6.00," and "I kept the $8.00." He denied threatening the victim to obtain the $8.00.

Officer Davis testified the Defendant told him the reason he "had taken the money . . . was because that the victim had owed him money for a haircut" and "refused to pay." When the State asked the officer, "Did he explain to you why he did what he did?" the officer responded, "He stated that it was because the victim had owed him money for haircuts and would not pay."

Officer Mouliere testified the Defendant told him, "Well, he gave me nine dollars, and I knew I wasn't going to get paid, so I took his money." Officer Mouliere recalled the Defendant informed him the victim owed him $9.00 and "I took my money." Additionally, the officer testified he recalled the Defendant stating, "'I took my pistol, and I got my money.'"

In this case, the victim, the Defendant, and the police officers testified that the Defendant was owed between $8.00 and $10.00 by the victim for a haircut the Defendant had given him. Additionally, the victim and the Defendant testified that the victim went to the Defendant to give him the money. Officer Mouliere acknowledged that the Defendant told him that the victim gave him nine dollars. Moreover, the Defendant does not dispute that he obtained an amount of money from

the victim. It is unclear from the record the events that took place between the victim seeking and finding the Defendant to repay him and the Defendant obtaining possession of the money. Additionally, the trial court's reference to the Defendant's two statements, on which he relied to support the conviction, "Uh, the first thing that he said to them was that, yeah, I did get, I did use the gun to get the money the victim owed me" and "he would not have done this had the complainant paid him," does not accurately reflect the testimony of the police officers. Consequently, the State failed to prove beyond a reasonable doubt the element of taking.

Accordingly, the Defendant's armed robbery conviction is reversed and the habitual offender adjudication and sentence imposed on the armed robbery set aside and a judgment of acquittal entered.

### *Untimeliness of Motion for a New Trial*

The Defendant asserts the trial court erred in denying his motion for new trial as untimely.

The Defendant filed a motion for new trial on October 10, 2008. The basis for the Defendant's motion was newly discovered evidence. The Defendant attached an affidavit from Mr. Williams which asserted Mr. Williams had falsely accused the Defendant of robbing him.

In his brief to this court, the Defendant argues in pertinent part:

Instead, it's [sic] decision to dismiss the motion as untimely incorrectly interpreted La. C. Cr. P. Art. 853.

La. C. Cr. P. Art. 853 provides that a motion for new trial must be disposed of before sentence. Although Mr. Jackson was originally sentenced in 2006, and the motion was filed in 2008, the trial court overlooked the fact that there was still a pending habitual offender hearing when the motion was filed. The motion was timely filed before the new sentencing. This assertion of law is supported by the fact that it is error patent to hold a habitual offender

9

hearing before resolving a pending motion for new trial. *State v. Randolph*, 409 So.2d 554 (La.1991); *State v. Washington*, 98-0583 (La. App. 4th Cir. 11/17/99), 747 So.2d 1191.

Likewise, when a motion for new trial is based on new evidence, the motion may be filed within one year after verdict or judgment of the trial court. La. C. Cr. P. Art. 853. Although the motion for new trial was filed more than one year after conviction, it was filed before any judgment of sentence as a habitual offender. It was timely filed. At trial, the trial court had serious concerns about the alleged victim's credibility. Mr. Jackson is entitled to having his timely filed motion heard, showing the alleged victim's admission that he had indeed lied during the trial.

The Defendant cites *State v. Randolph*, 409 So.2d 554 (La.1991) and *State v. Washington*, 98-583 (La.App. 4 Cir. 11/17/99), 747 So.2d 1191, *writ denied*, 00-365 (La. 9/15/00), 768 So.2d 1277, in support of his assertion. These cases, however, dealt with the trial court's *failure to rule* on the motion for new trial prior to imposition of sentence, not the untimeliness of the motion.

The State counters that the pending habitual offender adjudication had no bearing on extending the time for the Defendant to file a motion for new trial since he was sentenced on September 21, 2006.

Louisiana Code of Criminal Procedure Article 853 provides:

A motion for a new trial must be filed and disposed of before sentence. The court, on motion of the defendant and for good cause shown, may postpone the imposition of sentence for a specified period in order to give the defendant additional time to prepare and file a motion for a new trial.

When the motion for a new trial is based on ground (3) of Article 851, the motion may be filed within one year after verdict or judgment of the trial court, although a sentence has been imposed or a motion for a new trial has been previously filed; but if an appeal is pending the court may hear the motion only on remand of the case.

Louisiana Revised Statutes 14:3 provides:

10

The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.

In *State v. Broadnax,* 45 So.2d 604, 609 (La.1950), the court explained in pertinent part:

This court has previously pointed out that the comments to the various articles of the Criminal Code, printed as footnotes, have legislative sanction, and that it is appropriate and proper to take into consideration these comments in endeavoring to interpret and construe the provisions of the articles found therein. *See State v. Davis*, 208 La. 954, 977, 23 So.2d 801.

The comments to La.Code Crim.P. art. 853 provide:

(a) This article retains the rule of Art. 505 of the 1928 Code of Criminal Procedure that a motion for a new trial must be filed and disposed of before sentence. Art. 873 of this Code provides for a mandatory delay of three days between conviction and sentence in felony cases. Because sometimes the three-day delay will not afford sufficient time to prepare the motion for a new trial, Art. 853 above provides for postponement of the imposition of sentence. This is more liberal than the procedures of the 1928 Code, which permitted imposition of sentence within twenty-four hours after conviction (Art. 521).

(b) The second paragraph, taken from Sec. 362 of the A.L.I. Code of Criminal Procedure, gives the defendant a period of one year in which to file a motion for a new trial based on the ground of newly discovered evidence. The longer time allowed for filing on that ground is desirable because such evidence seldom will be discovered within the normal period for filing the motion for new trial.

A genuine construction of La.Code Crim.P. art. 853 contemplates filing of the motion for new trial before imposition of the sentence on the *underlying* conviction, not the habitual offender sentence.

Additionally, in *State v. Bolton,* 408 So.2d 250, 253 (La.1981), the "Defendant on September 29, 1981, filed a 'Motion to Remand Pursuant to Article 854, Louisiana Code of Criminal Procedure,' attaching a 'Motion for a New Trial' which he filed in the District Court, alleging the existence of newly discovered evidence." The verdict in this matter was rendered on January 11, 1980, and a sentence imposed on November 26, 1980. The defendant asserted that the motion was timely filed under La.Code Crim.P. arts. 851 and 853. The court disagreed and explained in pertinent part:

> Since more than one year has passed from the verdict date to the filing of the motion for new trial it is obvious that defendant's contention, that the motion for new trial was filed timely, is that it was filed within one year of sentencing.

> As expressed above under La.Code Crim.P. Art. 853 the motion may be filed within one year after verdict or judgment of the trial court, although a sentence has been imposed. . . (Emphasis added). In *State v. Blue*, 64 So. 411, 134 La. 561 (La.1914) this court defined verdict as:

>> (6) The word "verdict" is derived from the Latin "veredictum," meaning a true declaration. It is the answer of the jury made upon any cause, civil or criminal, committed by the court to their examination. Whatever they sign beyond this is immaterial, and to be rejected. It is a very important act; it is the culmination of the trial, and embodies the conclusion of the jury upon the questions of fact litigated on the trial. It is the decision of the jury, and, as such, it must stand if it is clear, intelligible, and responsive to the charge.

> *State v. Jackson*, 362 So.2d 766 (La.1978) and *State v. Molinario*, 383 So.2d 345 (La.1980) both refer to new trial motions filed "within one year after verdict" although they do not deal directly with the issue presented herein.

> As used in La.Code Crim.P. Art. 853, the verdict or judgment of the trial court indicates a finding of guilt or

12

innocence and in our opinion does not include sentencing. Accordingly we deny the motion to remand. . . .

*Id.* at 254.

In this case, the Defendant filed his motion for new trial based on newly discovered evidence more than one year after the verdict was rendered and more than one year after the underlying sentence was imposed. Consequently, the trial court did not err in denying the motion as untimely.

## CONCLUSION

For the foregoing reasons, the Defendant's conviction and sentence for possession of a firearm by a convicted felon is affirmed. The Defendant's armed robbery conviction is reversed and the habitual offender adjudication and sentence imposed on the armed robbery set aside and a judgment of acquittal entered.

**CONVICTION AND SENTENCE FOR POSSESSION OF A FIREARM BY A CONVICTED FELON AFFIRMED. ARMED ROBBERY CONVICTION IS REVERSED AND THE HABITUAL OFFENDER ADJUDICATION AND SENTENCE IMPOSED ARE SET ASIDE;**

**JUDGMENT OF ACQUITTAL ENTERED ON THE ARMED ROBBERY CONVICTION.**

NUMBER 09-45

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

STATE OF LOUISIANA

VERSUS

EDWARD CHARLES JACKSON

AMY, J., concurring in part and dissenting in part.

I agree with the majority that the defendant's conviction for possession of a firearm by a felon should be affirmed and that the trial court did not err in denying the defendant's motion for new trial as untimely.

However, I respectfully dissent from the reversal of the defendant's conviction for armed robbery. In my opinion, the officers' testimony regarding the reporting of the event coupled with the victim's testimony supports the conviction under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979) standard. The victim testified that the defendant came to collect money and that he did so while armed with a gun. Further, according to police, the defendant admitted using a gun to collect the money. The trial court found this latter testimony regarding the reporting of the event credible. As I find it inappropriate to reassess this evaluation on appeal, I conclude that, under the standard of review, the trial court could have found the essential elements of armed robbery proven beyond a reasonable doubt. Accordingly, I would also affirm the defendant's conviction for armed robbery.

As I would affirm both convictions, I concur in part and dissent in part.