# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1092


**STATE OF LOUISIANA**

**VERSUS**

**WENDELL BOURQUE**


**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. CR-868-04
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS
JUDGE**

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Billy Howard Ezell, Judges.

**AFFIRMED.**


**G. Paul Marx**
**Attorney at Law**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 237-2537**
**Counsel for Defendant/Appellant:**
**Wendell Bourque**


**Michael Cade Cassidy**
**District Attorney - 31st Judicial District Court**
**P. O. Box 1388**
**Jennings, LA 70546**
**(337) 824-1893**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

Stacey C. Naquin
31st Judicial District Court - Assistant District Attorney
P. O. Box 1388
Jennings, LA 70546
(337) 824-1893
Counsel for Plaintiff/Appellee:
State of Louisiana

**SAUNDERS, Judge.**

Herein, the Defendant appeals his conviction and sentence on the charge of sexual battery pursuant to La.R.S. 43.1. For the following reasons, we affirm both the conviction and sentence.

**FACTS AND PROCEDURAL HISTORY:**

Defendant, Wendell Bourque, was charged on October 15, 2004, by a bill of information with one count of sexual battery, a violation of La.R.S. 43.1. A jury trial commenced on May 24, 2005, and on May 26, 2005, Defendant was found guilty as charged. On February 4, 2009, Defendant filed a "Motion for New Trial." A hearing was scheduled for February 26, 2009, following which Defendant's motion was denied. On March 5, 2009, Defendant was sentenced to ten years at hard labor without the benefit of probation, parole, or suspension of sentence, with credit for time served. Defendant filed a "Motion to Reconsider Sentence" on March 23, 2009, which was denied without written reasons or a hearing on the same date.

At trial, A.S. testified that the seven-year-old victim, who was her cousin, was living with her at the time of the incident. On the evening of April 2, 2004, Defendant, who was a long time friend of the family, stopped by A.S.'s house around 6:00 p.m. He stated that his daughter, who was fifteen at the time, was coming over to his house to visit for the weekend and asked if the victim could spend the weekend also. Later, in the evening, A.S. stopped by Defendant's house and asked to borrow some money. She noticed Defendant's daughter was not there and asked where she was. Defendant told her his daughter went to town with some friends. She stated that "[the victim] seemed fine and happy, and I said, okay, and he let me borrow the money, and then I left." A.S. stated that the next day, Sunday, when she was at a Lake Arthur baseball field, she saw Defendant's daughter and asked where was her

father. The daughter stated she did not know. A.S. asked her if she had spent the weekend with Defendant and she said that she had not. This fact was corroborated during trial by Defendant's daughter. Later, Defendant called A.S. on her cell phone and then dropped the victim off at the ball field. That evening, when the victim got into a tub of hot water she started crying, saying that her "bottom" burned. A.S. testified:

> I asked her what was wrong, and she said her bottom burned real bad, and then I already had, you know, him say that Selena was suppose[d] to be there, and I started putting things together in my head, and I asked her if anyone had touched her, and that's whenever she had told me Wendell had.

A.S. called her mother, L.R., to come over. According to A.S., the victim told them that "she was at Wendell's house play fighting and he had stuck his finger in her private area–her vagina." A.S. asked her mother to take the victim to the hospital because her own baby was ill and she could not leave.

On cross examination, A.S. testified that she had known Defendant all her life and that she often visited at his house and on occasion she had left her own three children in his care. She said that he told her that the victim had "loose bowels" the evening of the alleged battery and that he had given her some Pepto-Bismol.

L.R. testified that at the hospital, the doctor showed her the victim's vaginal area and that "[t]here was redness." She stated that police officers met her at the hospital and she followed them back to Danny Semmes' office, who was an investigator with the Sabine Parish Sheriff's Officer. There, he told her to return again the next day because the victim was too traumatized "to talk about it anymore."

Danny Semmes testified that after he interviewed the victim the next day, he went to Defendant's house and advised him of the complaint. He stated that

Defendant said he was aware of the allegation. Defendant was *Mirandized* and his house was searched. A pair of little girls panties and shorts were found in the washing machine.

Dr. William Gaar was the emergency room physician at Jennings American Legion Hospital on the evening L.R. took the victim in for an examination. He testified that he saw redness in the vaginal area of the victim, but did not see any tearing of the hymen. He indicated that he thought the redness was vaginitis and recommended the area to be treated with Neosporin. He testified that the vaginitis could have been caused by a finger being inserted into the vagina, or possibly by soap, sweat, or too tight underpants.

The victim, who was nine years old at the time of trial, testified. She stated that on the evening of the alleged battery, after she and Defendant ate dinner, she went into his bedroom to watch TV. He came into the bedroom and they began to wrestle. She said that during the wrestling, he "stuck his finger in my wrong spot. . . . my privates." She said that she left the room for a minute then asked him when she could go home and he told her tomorrow. She told A.S. the next evening while she was bathing. She testified that she did not recall A.S. coming over to Defendant's house that night and agreed that she experienced "loose bowels" that evening.

Finally, Dr. Lee J. Monlezun was qualified as an expert in obstetrics and gynecology. Using Doctor Gaar's medical report from the evening the victim was admitted into the emergency room for possible molestation, he explained his interpretation of the results of the examination. He noted that Doctor Gaar wrote in his report that the victim's vaginal opening was "approximately one point five centimeters (1.5cm). No tears noted." He stated that he examined Defendant's

fingers, and that only his little finger may have been small enough to enter the victim's vagina without tearing the hymen. The doctor explained that the burning the victim experienced when she got into the bath tub was caused by "vulvovaginitis, it's going to burn, especially if it's warm water." The doctor opined that the condition was undoubtedly caused by the loose bowels or diarrhea and not the result of a finger being inserted into her vagina. While admitting that there was a possibility that Defendant could have inserted his little finger into the victim's vagina, he seriously doubted he could have done so without some tearing because the victim said they were wrestling around.

Defendant has perfected a timely appeal and raises four assignments of errors, as follows: (1) the evidence was insufficient to sustain the verdict; (2) the trial court erred when it denied Defendant's motion for mistrial based on other crimes evidence which was impermissibly introduced; (3) the trial court erred when it denied Defendant's "Motion for a New Trial"; and (4) the trial court "did not provide notice of time limitation for post conviction application under Article 881.1 of the code of criminal procedure."

**APPELLANT'S ASSIGNMENTS OF ERROR:**

1.  The verdict in this case is contrary to law in that the physical evidence and the direct [evidence] conclusively established that the offense conduct did not occur. The alleged victim's testimony was rebutted by physical evidence through expert medical testimony establishing that the alleged victim's medical condition was scientifically unrelated to the claimed conduct, and the State never established the intent necessary to support conviction under the Statute for Sexual Battery.

2.  The Trial Court erred when it denied a Mistrial in spite of the introduction of testimony on a videotape regarding what the alleged victim had heard about the defendant's past conduct. This had nothing to do with the documentation of a child's first report or any other material or relevant issue. The Trial Court could not

-4-

allow admission of such information because it considered that part of the tape not specifically included in the objection.

3.      The trial Court erred when it denied the Motion for New Trial, despite evidence provided by the State to the Defense after trial that key elements of the State's Case were based on Perjury. The Defense was under no burden beyond proving that there was exculpatory evidence which could change the result and which had not been available despite due diligence.

4.      The Trial Court did not provide Notice of Time Limitation for Post Conviction Application under Article 881.1 of the Code of Criminal Procedure.

## LAW AND DISCUSSION ON THE MERITS:

### Assignment of Error Number 1

In pertinent part, sexual battery is defined as:

A. Sexual battery is the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender:

(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender.

La.Code Crim.P. art. 43.1.

Defendant argues that the evidence, as presented by the State, was insufficient to support a conviction for sexual battery.

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan,* 420 So.2d 1105 (La.1982); *State v. Moody,* 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. *See King,* 436 So.2d 559, citing *State v. Richardson*,

425 So.2d 1228 (La.1983).

*State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27.

Moreover, this court has held that the testimony of the victim alone may be sufficient to prove the elements of the offense, even if there was no physical evidence of the alleged conduct. *State v. Jaramillo,* 06-1377 (La.App. 3 Cir. 3/7/07), 953 So.2d 146, *writ denied,* 07-732 (La. 11/2/07), 966 So.2d 600.

Defendant argues in brief that the State failed to prove that he inserted his finger into the victim's vagina because the medical history shows that the redness or irritation experienced by the victim was caused by a bout of diarrhea, and not Defendant's finger. Defendant argues that "[t]he State cannot change its approach to this case simply because the evidence fails to support its charge: the Defendant was not alleged to have simply touched the child, but to have penetrated her with his fingers."

We find that when viewed in a light most favorable to the State, the evidence was sufficient to prove all the elements of the charged offense. To prove that Defendant was guilty of sexual battery, the State had only to prove he touched the anus or genitals of the victim and that the touching was without consent. The victim's trial testimony was consistent with what she told her cousin initially and the Children's Advocacy Center interviewer. While Doctor Monlezun testified that Defendant's fingers were too big to have penetrated the victim's vagina without tearing the hymen–he measured them against the emergency room's doctor's estimation of the size of the victim's vaginal opening. We find that it cannot be speculated what a seven-year-old would consider "in" her wrong spot. Furthermore, we find that although the medical evidence does not prove that he actually penetrated

her with his finger, the victim could have had the vaginitis caused by the diarrhea and still have been touched inappropriately by Defendant.

Finally, Defendant argues that "[t]he likely reason for the State to rely on the penetration of Bourque's fingers was to establish intent, particularly important where there was a story of wrestling for sport around the time this happened, and a penetration might rule out 'unintentional' touching."

As noted by Defendant, sexual battery is a general intent crime. *State v. Stevenson*, 05-52 (La.App. 5 Cir. 6/28/05), 908 So.2d 48, *writ denied*, 05-2592 (La. 6/2/06), 929 So.2d 1247.

Louisiana Revised Statutes 14:10, criminal intent, provides:

> (1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.

> (2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act for failure to act.

In general intent crimes, criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. *State v. Howard,* 94-23 (La. 6/3/94), 638 So.2d 216.

We find that criminal intent was established when the State offered uncontested testimony that after he asked if the victim could visit for the night, Defendant misled A.S. that his own daughter would be there at his house, and then again lied when A.S. went to his house and noticed the daughter was not there. Defendant intentionally deceived A.S. so that he could be alone with the victim. Accordingly, we find that Defendant exhibited specific intent, and, therefore, there was general intent to commit

the offense.

We, thus, find that there is no merit to this assignment of error.

Assignment of Error Number 2

At trial, the jury was shown an edited version of a videotape made when Joelyn Doland, director of Children's Advocacy Center, interviewed the victim regarding the alleged sexual battery. Defendant objected after the jury was shown the video because during the interview the victim mentioned having heard about another incident involving Defendant and a juvenile. Defendant moved for a mistrial, which was denied by the trial court for the reason that there was no contemporaneous objection made prior to the publication of the video to the jury.

Defendant argued that he specifically requested that any references to other crimes or bad acts be redacted from the tape, to which the trial court had agreed and ordered the State to do so during a motion-in-limine hearing held just prior to commencement of the trial. The trial court took a recess and, in chambers, reviewed the video and compared a specific list of areas in the video that Defendant had objected to during the motion-in-limine hearing.

Having reviewed the video, and its own notes, the trial court stated:

> THE COURT: All right. Right now is where it's at, 10:09:34, 5, and so forth.
>
> . . . .
>
> THE COURT: All right. The hand notations that I have, again, do not show that as an area that was object to. Mr. Bull, maybe you can correct me?
>
> MR. BULL: Well, Your Honor, not a–not a specific–in other words, I tried to provide this to the Court without having the–the–the full tape, but I objected to any reference to any other crimes, and that's–that's one of my exact statements in the motion in limine.

-8-

. . . .

THE COURT: The Court finds that there was not a contemporaneous objection at the time of the motion in limine specifying which area of the tape that we're dealing with now. As a result, the objection is waived. The defense provided the Court with its specific list of those specific objections throughout the tape, including the counter numbers. The counter number of the area that we're now dealing with is not on this list. The Court relied on that in making its ruling yesterday after it had viewed the tape as well, and, again, the Court finds that there is–there was not a specific objection to the–the area that we are now dealing with in which there is now an objection. The–the defense objection is overruled, and the motion–and the motion for a mistrial as well is denied.

Defendant asserts that he had objected to the playing of any portion of the tape which contained any other crimes evidence. He argues that "[t]his ruling is reversible error because it misapplies the contemporaneous objection rule and violated the Code of Criminal Procedure." Defendant cites La.Code Crim.P. art. 770, which mandates a mistrial when a prejudicial comment refers to other crimes evidence or bad acts by a judge, district attorney, or a court official within the hearing of the jury.

However, whereas the victim was not any of the persons listed, La.Code Crim.P. art. 771 is the appropriate statute dealing with prejudicial comments made in front of the jury. Louisiana Code of Criminal Procedure Article 771 provides that an admonition to the jury be made to disregard the remark and "[i]n such case, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."

> As a general matter, mistrial is a drastic remedy which should only be declared upon a clear showing of prejudice by the defendant. *State v. Scott,* 04-1312 (La.1/19/06), 921 So.2d 904; *State v. Wilkerson*, 403 So.2d 652, 659 (La.1981) (mere possibility of prejudice is not enough to warrant mistrial). In addition, a trial judge has broad discretion in determining whether conduct is so prejudicial as to deprive an accused of a fair trial. *State v. Sanders,* 93-0001, pp. 20-21 (La.11/30/94), 648 So.2d 1272, 1288-89; *State v. Wingo,* 457 So.2d 1159, 1166 (La.1984).

-9-

*State v. Leonard,* 05-1382, p. 11 (La. 6/16/06), 932 So.2d 660, 667.

The comment made by the victim to the Children's Advocacy Center's interviewer was to the effect that she had heard Defendant had done something like this to other "kids." There was no indication of the source of this information or any detail as to what the "this" was. The comment was brief and without elaboration. A mistrial in this case is only authorized where substantial prejudice will otherwise result. *State v. Dozier,* 97-1564 (La.App. 3 Cir. 5/20/98), 713 So.2d 729, *writ denied*, 98-1694 (La. 11/25/98) 729 So.2d 573. We cannot say that the remark of the victim made it impossible for Defendant to have received a fair trial; accordingly, the trial court did not abuse its discretion.

We find that there is no merit to this assignment of error.

<u>Assignment of Error Number 3</u>

Defendant argues that a witness who testified at trial, L.R., came forward after the trial and told the assistant district attorney who prosecuted the case that because she had concerns about Defendant being a child molester, after he had returned the victim to A.S., she asked the victim if anyone, including Defendant, had inappropriately touched her. She said that the victim told her no. L.R. stated that she told A.S. the victim said she had not been touched by the Defendant, but A.S. persuaded her not to say anything because she believed the victim was telling the truth when she said she was sexually battered by Defendant. This information was relayed to defense counsel via a letter. A hearing was held on February 26, 2009 on Defendant's "Motion for New Trial." The trial court denied the motion stating that it could not grant a new trial based solely on a letter.

Defendant argues that the trial court erred when it denied his motion.

However, we find that Defendant's "Motion for New Trial" was untimely filed. The verdict was rendered on May 26, 2005. The District Attorney's Office sent the letter to defense counsel on June 6, 2005. Defendant's "Motion for New Trial" based on the alleged newly discovered evidence was not filed until February 4, 2009.

Louisiana Code of Criminal Procedure Article 851, in pertinent part, provides:

The motion for a new trial is based on the supposition that injustice has been done the defendant, and unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.

The court, on motion of the defendant, shall grant a new trial whenever:

. . . .

(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.

Louisiana Code of Criminal Procedure Article 853 provides that a motion for a new trial based on newly discovered evidence "may be filed within one year after verdict or judgment of the trial court, although a sentence has been imposed. . . ." In *State v. Jackson,* 09-45 (La.App. 3 Cir. 10/7/09), 19 So.3d 631, this court addressed the issue of timeliness in a factually similar case. In *Jackson*, the accuser made an affidavit stating that he had falsely accused the defendant. The defendant filed a motion for a new trial based on newly discovered evidence. The motion was filed more than one year after judgment was rendered and the defendant was awaiting sentencing on a habitual offender adjudication. He argued that he had one year from the date of habitual offender sentencing in his case. The trial court denied the motion based on the untimely filing of the motion. On appeal, this court stated that the

-11-

statute specifically meant that a motion for new trial must be filed within one year from the date of the judgment and not from the date of sentencing. In the current case, Defendant's "Motion for New Trial" was filed more than four years after the verdict was rendered.

Accordingly, we will not consider Defendant's assignment of error number three.

### Assignment of Error Number 4

In brief, Defendant asserts the trial court failed to advise him of the two years from the date the conviction and sentence becomes final in which to file for post-conviction relief as set forth in La.Code Crim.P. art. 930.8. However, this assertion is not correct. The trial court did advise Defendant of the two-year time delay after it imposed the sentence.

Further, trial counsel filed a "Motion to Reconsider the Sentence" asserting that the sentence was excessive. This motion was timely filed on March 23, 2009. It was denied without written reasons. Trial counsel then filed a "Motion and Order to Appeal Sentence," which was granted by the trial court on March 24, 2009. However, when appellate counsel submitted his appellate brief, except for the reference to La.Code Crim.P. art. 881.1 in this assignment of error, he did not raise any issue regarding the sentence. According to the Uniform Rules—Courts of Appeal, Rule 3–2, this court will not review issues raised for the first time on appeal, "unless the interest of justice clearly requires otherwise." Accordingly, we will not address this assignment of error.

**CONCLUSION:**

For the foregoing reasons, the Defendant's conviction and sentence are affirmed.

**AFFIRMED.**