468 So.2d 803 (1985)
Hameed A. ELNAGGAR and Kathleen Jordan Elnaggar
v.
FRED H. MORAN CONSTRUCTION CORPORATION, et al.
No. 84 CA 0213.
Court of Appeal of Louisiana, First Circuit.
April 16, 1985.
*804 Robert R. Rainer, Baton Rouge, for plaintiff-appellant Hameed A. Elnaggar and Kathleen Jordan Elnaggar.
J. Arthur Smith, III, Baton Rouge, for defendant-appellee Fred A. Moran, individually, The Meadows Development Corp. and John H. Schaeffer.
Before GROVER L. COVINGTON, C.J., and LOTTINGER, JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
This is a redhibition action. Plaintiffs bought a residence on August 20, 1981 from Fred H. Moran Construction Corporation. The property was shown the plaintiffs by Fred H. Moran, an officer of the corporation. On June 4, 1981 the corporation and plaintiffs entered into an Agreement to Purchase. Plaintiffs' original petition, filed March 8, 1982, alleged a litany of "facts [which] constitute redhibitory vices and defects entitling them to judgment against the defendants decreeing a diminution of the purchase price in the sum of $120,138.50". The defendants named in the original petition were the corporation, Mr. Moran, The Meadows Development Corporation (Meadows), and John H. Schaeffer. The individuals Moran and Schaeffer and the Meadows corporation filed an Exception of No Cause of Action which was maintained on April 30, 1982; plaintiffs were given fifteen days from April 30 to amend the petition to set forth with specificity a cause of action.
Plaintiffs' First Amending and Supplemental Petition, filed May 17, 1982, alleged as Moran's personal liability representations which he purportedly made to plaintiffs that there were no plans to develop the open acreage abutting the rear property line of the lot and plaintiffs would be able to buy at least two acres for $10,000 to $12,000 per acre when plaintiffs' home in Colorado was sold. Plaintiffs "on three occasions told MORAN they were willing and ready to finalize the purchase of the property adjacent to Lot 33 as committed by him". They further alleged that Mr. Moran was an incorporator, director, and agent for service of process of Meadows and that Meadows, as owner or agent of the owner of the abutting undeveloped acreage, submitted a proposal to the Planning Commission to develop the land as a densely packed subdivision comprising small lots and small houses and that Moran "appeared individually and as agent for the MEADOWS CORPORATION AND SCHAEFFER, urging that the proposed Parterre Subdivision be approved". The foregoing allegations, plus the alleged representation that the abutting property would provide plaintiffs "the privacy of a park" constitute, in plaintiffs' view, "a misrepresentation *805 as to a material fact, the principal motive of plaintiffs in purchasing Lot 33, of which he had knowledge, and as to a principal quality of Lot 33".
Meadows' and Schaeffer's alleged liability is based on the alleged representations of Moran whom plaintiffs characterize as their agent whose representations bind them.
The First Supplemental Petition seeks rescission of the sale and in the alternative sums of money to repair and/or correct alleged redhibitory vices as well as damages for, inter alia, loss of convenience and enjoyment of the privacy of a park on the abutting property.
Defendants Moran, Meadows, and Schaeffer filed several responsive pleadings to the First Supplemental Petition, including an Exception of No Cause of Action. Before the hearing on the Exception of No Cause of Action was held plaintiffs filed their Second and Third Supplemental Petitions on August 20, 1982 and April 19, 1983. The purpose of the Third Supplemental Petition was to charge liability on the part of John H. Schaeffer as the designer of the house, including indoor brick and masonry planter boxes which were allegedly "defective, faulty and negligent[ly] design[ed]" causing cracks in the slab, exterior and interior walls and ceiling. Schaeffer filed an Exception of Prescription to plaintiffs' Third Supplemental Petition.
The Trial Court conducted a hearing on June 30, 1983 on the myriadfold motions and exceptions; testimony and documentary evidence were considered by the Court. The Exception of No Cause of Action was maintained as to Moran and Meadows but overruled as to Schaeffer and the supplemental amending petitions were dismissed at plaintiffs' costs. The Exception of Prescription filed by Schaeffer was taken under advisement as was the Exception of Prematurity filed by Moran, Meadows, and Schaeffer. On October 12, 1983 the Court overruled the Exception of Prematurity as to all Exceptors and maintained Schaeffer's Exception of Prescription. On December 3 and 6, 1983 Judgments on Motions and Exceptions were signed. Plaintiffs devolutively appealed.

ASSIGNMENTS OF ERROR
Plaintiffs-appellants assign as errors the Trial Court's maintaining the Peremptory Exception of No Cause of Action as to Moran, individually, and Meadows Development Corporation and its maintaining the Peremptory Exception of Prescription as to Schaeffer.

ISSUES
The issues presented are:
1. Whether the First and Second Supplemental and Amending Petitions state a cause of action against Moran, individually;
2. Whether the petitions referred to in the first issue state a cause of action against Meadows Development Corporation; and
3. Whether plaintiffs' cause of action, if any existed, against Schaeffer in his role as designer-architect, has prescribed.

PERSONAL LIABILITY OF MORAN
The thrust of plaintiffs' attempt to hold Moran personally liable is that Moran made representations that they could purchase two or more acres of abutting land to assure them of the privacy they obviously valued greatly. They argue that because Moran was an officer of Fred H. Moran Construction Corporation, from which entity they bought their home, and also an officer and agent for Meadows Development Corporation, which sought official approval for it to develop the acreage abutting plaintiff's home into a subdivision of homes to contain significantly less living area than plaintiffs' home, which contains over 5,000 square feet of living area, Moran is liable for diminishing the value of their property and the deprivation of a park-like setting so essential to their desire for privacy as reflected by their pleadings. Plaintiffs assert that at the time Moran allegedly told them two or more acres of the abutting land could be purchased by *806 them for $10,000 to $12,000 per acre he knew that neither he nor the Moran Corporation owned the land and that the Meadows Development Corporation and/or John Schaeffer owned it and planned to develop it into a densely packed subdivision of single-family dwellings, the truth of their assertion being evidenced by Moran's appearing on behalf of Meadows at the Planning Commission's meetings at which the proposed development was being studied and actively seeking Commission approval.
It is axiomatic that "an exception of no cause of action must be determined in the light of the well pleaded averments of plaintiff's petition, all of which must be accepted as true" (Barnett v. Develle, 289 So.2d 129, 138 (La.1974)) but courts "are not bound to accept the plaintiff's conclusions of law". Austin v. Succession of Austin, 225 La. 449, 73 So.2d 312, 315 (1954).
Although for purposes of determining the merits of the Exception of No Cause of Action, Moran is deemed to have informed plaintiffs, in response to their question, that the two or more acres of the abutting and undeveloped land was available for purchase by plaintiffs for $10,000 to $12,000 per acre, their legal conclusion that such statement is binding on the Meadows Development Corporation and/or Schaeffer, as owners, because Moran is an officer, incorporator, stockholder, and agent for service of process, is erroneous.
As stated by Dixon, C.J., for the Supreme Court in Chauvin v. Bohn, 411 So.2d 442 (La.1982), "although C.C. 2275 literally demands only that transfers of immovable property be in writing, the jurisprudence has construed the article to encompass all contracts concerning immovable property". at 445, fn. 4. This Court, in East Bank Realty, Inc. v. Robert, 411 So.2d 500 (La.App. 1st Cir.1982), adhered to the jurisprudential rule that "a power of attorney to enter a contract relating to the alienation of real estate must be in writing". at 502.
Plaintiffs purchased their home from Fred H. Moran Construction Corporation, represented by Fred H. Moran, and the Act of Sale with Mortgage recites the authorization of Mr. Moran to represent the corporation in the transaction, making reference to the book and page numbers of the official Parish of East Baton Rouge records in which the resolution authorizing him to act is recorded. There is no allegation that Moran made any statement that he represented to plaintiffs that he was the duly authorized agent for the owner of the abutting land and could assure them that for $10,000 to $12,000 per acre they could buy two or more acres of land when their home in Colorado was sold.
Accepting as true the allegation that Moran was an officer, director, and stockholder of the Moran Construction Corporation and Meadows Development Corporation, two distinct legal entities, that is simply insufficient in law to conclude that when Moran the individual speaks the Meadows Corporation jumps. Those allegations of fact, if proved to a certainty at a merits trial, would not support a conclusion that Meadows Corporation is Moran's alter ego. Likewise, the allegations of fact would not support the legal conclusion that Moran Construction Corporation is Moran's alter ego. Thus, there is no basis for imposing personal liability on Moran on the basis of plaintiffs' pleaded facts, accepted as true for purposes of the Exception of No Cause of Action. Kingsman Enterprises, Inc. v. Bakerfield Electric Company, Inc., 339 So.2d 1280 (La.App. 1st Cir.1976); Liberto v. Villard, 386 So.2d 930, 936 (La. App. 3rd Cir.1980).

MEADOWS DEVELOPMENT CORPORATION AND C.C. art. 667
Plaintiffs-appellants alleged in their petitions and argue in this Court that "the development of Parterre Subdivision will interfere with the enjoyment of their home and will cause them damage". Contending that Moran, Meadows Corporation, and Schaeffer "are abusing their rights as adjoining landowners by planning a subdivision of smaller and densely populated lots and a masonry wall as to greatly diminish *807 the value of plaintiffs' land" plaintiffs-appellants argue that they are "liable as owners, agents and proprietors under Articles 667, 2315 and 2324" of the Civil Code.
In support of their novel proposition, plaintiffs-appellants cite Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La. 1975); Androwski v. Ole McDonald's Farms, Inc., 407 So.2d 455 (La.App. 1st Cir.1981); Dean v. Hercules, Incorporated, 328 So.2d 69 (La.1976); Salter v. B.W.S. Corp., Inc., 290 So.2d 821 (La.1974); and Chaney v. Travelers Insurance Co., 259 La. 1, 249 So.2d 181 (1971).
In Hero Lands Company, supra, Summers, J., for the Supreme Court, made the following pertinent observations:
"Recently in Hilliard v. Shuff, 260 La. 384, 256 So.2d 127 (1972), this Court restated, as a universally accepted rule of law, the right of the owner of property to conduct thereon any lawful business not per se a nuisance, as long as the business is so conducted that it will not unreasonably inconvenience a neighbor in the reasonable enjoyment of his property. But every business, however lawful, must be conducted with due regard to the rights of others, and no one has a right to erect and maintain a nuisance to the injury of his neighbor even in the pursuit of a lawful trade, or to conduct a business on his own land in such a way as will be injurious or offensive to those residing in the vicinity. (citation omitted). Article 668 of the Civil Code, in substance, embodies the same principle.
"....
"While the owners of property are not required to suffer damage as a result of works undertaken on their neighbor's property, the law has decreed that certain inconveniences must be tolerated. Society requires this of its citizens because many lawful uses of property necessarily result in inconveniences to one's neighbors. La. Civil Code art. 668.
"But the extent of inconvenience the property owner must tolerate depends upon the circumstances.... The damage may well be intrinsic in nature, a combination of facts and conditions which, taken together, do not involve a physical invasion but which, under the circumstances, are nevertheless by their nature the very refinement of injury and damage. Salter v. B.W.S. Corporation, Inc., 290 So.2d 821 (La.1974)." 310 So.2d at 97-98.
The issue presented to the Supreme Court in Hero Lands Company, supra, was whether "the construction of a hazardous high pressure gas pipeline adjacent to and within fifteen feet of the property line separating contiguous estates give rise to an action for damages caused by this proximity which impairs the market value and full use of the neighboring estate?" 310 So.2d at 96. Characterizing the issue as res nova the Court reversed the Court of Appeal's affirmance of the Trial Court judgment maintaining defendant's Exception of No Cause of Action for the reasons stated in part in the excerpt above.
Charia v. Stanley, 359 So.2d 291 (La. App. 4th Cir.1978), writs denied, 362 So.2d 579, per Beer, J., commenting on the rationale of Hero Lands Company, supra, stated as follows:
"The paragraph which describes the applicability of Article 667 makes it clear that Article 667 recovery is dependent on grounds distinct from negligence, namely, the performance of some act which is inherently dangerous to a neighbor despite the manner (negligent or nonnegligent) in which it is carried out. ...". 359 So.2d at 293.
Judge Beer further reasoned that "in many cases applying Article 667, the damage-producing activity has been one which, conducted in a normal and careful manner, nevertheless resulted in damage, thereby earning the appellation `ultrahazardous activity'". 359 So.2d at 293. The Court held that the operation of a so-called third-rate hotel with some previous history of mattress fires is not, per se, "an ultrahazardous activity causativeon its ownof the damage". Plaintiff's business had sustained damages caused by smoke originating in the fire at the third-rate hotel and *808 water utilized by the firefighters in extinguishing the fire. A case cited in Charia, supra, was the Langlois v. Allred Chemical Corp. case, 255 La. 1067, 249 So.2d 133 (1971), cited by plaintiffs-appellants herein.
In Bodoin v. Daigle, 452 So.2d 828 (La. App. 3rd Cir.1984), writs denied, 458 So.2d 485 (1984), the question was whether a fire of unknown origin which spread to plaintiffs' property and inflicted property damage imposed C.C. art. 667 liability on the landowner on whose land the fire started. For several years before the fire, defendants "began letting grass and weeds grow uncut in their pasture as a visual barrier along the fence line which separates their property from the" plaintiffs. "The grass and weeds were four to five feet high and covered an area approximately twenty feet wide by a depth of two hundred feet." The fire began away from the visual barrier but gradually spread into the uncut grass and crossed onto the plaintiffs' property despite efforts to contain it. The Court of Appeal, per Knoll, J., in rejecting plaintiffs' assertion that the facts stated a C.C. art. 667 liability on defendants, quoted the foregoing excerpt from Hero Lands Company, supra, and held as follows:
"We find as a matter of law that the overgrowth of grass and weeds in the Daigle pasture, which is located in a rural agricultural area, cannot be considered such an intrusion into their neighbor's property as would give rise to an action for damages under LSA-C.C. Art. 667. Therefore, we conclude that the trial court did not err in failing to instruct the jury regarding Article 667." 452 So.2d at 831.
Schulingkamp v. The Board of Levee Commissioners of the Orleans Levee District, 425 So.2d 913 (La.App. 4th Cir.1983) is particularly pertinent to a proper disposition of plaintiffs-appellants' contention that Moran, Meadows Corporation, and Schaeffer are liable for alleged diminution in value of plaintiffs' home on the basis of C.C. art. 667. Plaintiff and defendant Young acquired leasehold rights from defendant Board. Plaintiff's original leasehold rights, acquired in 1973, were to a boat slip and boathouse. A restriction against using the facility as a domicile was removed by the Board in 1975 and plaintiff's lease was amended to reflect the change. Thereafter plaintiff obtained the required permission from the Board and converted his boathouse into an apartment for his residence at considerable expense. Sometime after plaintiff built his apartment defendant Young in March, 1978 obtained permission to demolish the old building he had occupied since 1959 as a boat sales and repair business and to construct a new 2-story building on the site he leased. The new structure built by Young is located "some 34 feet from the balcony of plaintiff's building, so that plaintiff now has a view of the wall of the building instead of the oak trees and park he could formerly view. Both of the properties are zoned light commercial and Young's building conforms to the zoning." at 914.
In reversing the lower court's award of damages measured as a reduction in the resale value of plaintiff's property, the Court of Appeal, per Schott, J., quoted C.C. arts. 667 and 668 and reasoned, in pertinent part, as follows:
"Art. 667 does not support the judgment against Young. Unless Young's use of his property constituted ultra hazardous activity it was incumbent upon plaintiff to prove negligence on Young's part in order to recover. Charia v. Stanley, 359 So.2d 291 (La.App. 4th Cir. 1978). Plaintiff proved neither of these elements. Furthermore, a reading of Art. 668 with 667 clearly precludes plaintiff from recovery under the circumstances of this case....
"...
"The damage occasioned to plaintiff's property was precisely the loss of the view over the park resulting from the construction of Young's building. While the trial judge attempted to isolate plaintiff's damages as a reduction in the resale value of his property, aside from the mere inconvenience of losing his view as a result of Young's work, the testimony of plaintiff's realtor at the hearing on the *809 injunction was to the effect that only the asthetic value of plaintiff's house was diminished and he equated that loss with the loss of the view from plaintiff's balcony.
"As to the Levee Board, the trial court found that it breached some duty to warn plaintiff when he began construction of his residence that Young was planning to construct a building on his property. The flaw in this theory is that the Levee Board had no such duty. As previously stated this property was zoned light industrial and Young had a perfect right to use his property in conformity with that zoning. The record shows that Young had spoken to someone with the Levee Board and advised that he intended to demolish an old building which was on the site and construct a new one and that this conversation took place before plaintiff applied for permission to build his residence. This hardly translates into a duty on the Board to recall the report to plaintiff what might be contemplated by Young at some future date. Furthermore, if any duty existed it was upon plaintiff to ascertain the zoning of the property and to determine what might be constructed by his neighbor at some future date before he constructed his own improvements....
"Plaintiff argues that the Levee Board as the common lessor of both tenants had some sort of a special duty to protect him from making improvements which might be inconsistent with objectionable future improvements on neighboring property.... The Levee Board guaranteed plaintiff peaceable possession of the premises but it had no duty to advise him as to what uses of neighboring property are permitted under the light industrial zoning which prevails. Although the lease required plaintiff to get the Board's approval in advance of improvements being made to the property, we cannot draw the slightest inference or insinuation from this provision that the Board was obliged to warn plaintiff of possible construction on the neighbor's property ..."
The remaining cases cited by plaintiffsappellants as authority for the proposition that their petitions state a cause of action against Moran, Meadows Corporation, and Schaeffer, in solido or against any of them separately, are inapposite.
Applying the rationale of Hero Lands Company, supra, Charia, supra, Bodoin, supra, and Schulingkamp, supra, we find, as a matter of law, that the development of a residential subdivision containing homes less ostentatious than plaintiffs' home on land abutting plaintiffs' property does not confer upon plaintiffs-abutting property owners an action for damages under C.C. art. 667. When all necessary approvals for developing a residential subdivision have been obtained the development itself is a "lawful business not per se a nuisance" and even though plaintiffs will not have the much cherished privacy which a "park like atmosphere" would provide upon completion of the subdivision consisting of less expensive and less spacious residences and grounds, their eroded seclusion or privacy is not an "unreasonable inconvenience" as a matter of law; it is nothing more than one of life's little aggravations which plaintiffs "must tolerate".

EXCEPTION OF PRESCRIPTION
Testimony adduced at the hearing on the Exception of Prescription filed by Schaeffer, reflected that he was the person who drew the "design concept" but not the complete building plans used to construct the subject residence. Testimony further established that the "design concept" was completed before June 13, 1979, the date on which it was submitted to the local governing authorities for approval to locate a structure of that design on the lot plaintiffs ultimately purchased in August, 1981. The residence was "substantially completed" by the end of 1980; all that remained to be done when plaintiffs' submitted their formal offer to Moran Construction Corporation was "trim work", installation of flooring, and miscellaneous minor items. The residence was constructed as a speculative *810 venture and not specifically for plaintiffs who were first made aware of the existence of the property by a realtor they utilized in their "house shopping" sometime in May, 1981.
Plaintiffs' suit alleges malpractice or negligence on the part of Schaeffer as designer of the house. Defendant-appellee, Schaeffer, asserts that the prescriptive period of one year, provided for in C.C. art. 3536 (now 3492) applies because plaintiffs' suit against him in his role as architect alleges negligence in the design work. The detailed specifications for use by the contractor in building the house were not prepared by Schaeffer.
Plaintiffs-appellants contend that R.S. 9:2772 applies and that the prescriptive period applicable is ten years. Additionally, they rely on C.C. arts. 2762 and 3545 (now 3500) for applying the ten year prescriptive period in their suit against Schaeffer.
Mr. Schaeffer's role was limited to drawing the elevations and floor plans, i.e., how the building would look on the exterior and the relationship of one room to the other. He did not prepare specifications for the contractor to follow in the actual construction phase; likewise, he did not sign or stamp the "design concept" drawings or supervise any phase of the construction. The construction company which built the house altered the "design concept" to the extent that it changed the planter box from serving as a continuous divider between two rooms, making, instead, two planter boxes with an opening between them to serve as a passageway between the two rooms.
Based on the totality of the circumstances of Schaeffer's involvement with the "design concept" of the residence, Schaeffer did not function as an architect within the purview of R.S. 9:2772 and C.C. arts. 2762 and 3545. Therefore, the prescriptive period of one year, provided for in C.C. art. 3536 (now 3492) for offenses and quasi-offenses applies. The Exception of Prescription was properly maintained.
There being no merit to any of the assignments of error, the judgment of the District Court is affirmed at plaintiffs-appellants' cost.
AFFIRMED.