STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-994

STATE OF LOUISIANA

VERSUS

CHRISTOPHER K. MAYEUX

************

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 94802
HONORABLE J. CHRISTOPHER PETERS, JUDGE

************

J. DAVID PAINTER
JUDGE

************

Court composed of Elizabeth A. Pickett, J. David Painter, and Phyllis M. Keaty, Judges.

AFFIRMED AND REMANDED FOR CLARIFICATION OF SENTENCE.

J. Reed Walters
District Attorney
P.O. Box 1940
Jena, LA 71342
COUNSEL FOR APPELLEE:
      Christopher K. Mayeux

Annette Roach
Louisiana Appellate Project
P.O. Box 1747
Lake Charles, LA 70602
COUNSEL FOR DEFENDANT-APPELLANT:
      State of Louisiana

**PAINTER, Judge.**

Defendant, Christopher K. Mayeaux, appeals his conviction for battery on a police officer and the lack of clarity of his sentence as to credit for time served. For the following reasons, we affirm the conviction and remand for clarification of the amount of credit given for time served.

## FACTS

Defendant was an inmate at the LaSalle Correctional Center (LCC) on July 18, 2011. He was involved in a fight with the victim in lockdown cell 103 where Defendant was placed after fighting with deputies in the hallway upon returning from court on that date.

Defendant was charged by bill of information with battery of a police officer while in the custody of the Department of Corrections, a violation of La.R.S. 14:34.2(B)(2). Defendant was arraigned and entered a plea of not. Following trial by jury, Defendant was found guilty and sentenced to serve eighteen months at hard labor without benefit of probation, parole, or suspension of sentence, to run consecutively with any sentence he was serving at the time of the incident. A motion for appeal was filed and granted.

Defendant is now before this court asserting three assignments of error. Defendant contends that the evidence is insufficient to support his conviction, that the trial court erred in its charges to the jury, and that the record is unclear as to what credit he is to receive for time served prior to the imposition of sentence.

## DISCUSSION

### *Error Patent*

In accord with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find none.

### *Sufficiency of the Evidence*

In his first assignment of error, Defendant contends that the evidence introduced at the trial of this case, when viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979) standard, was insufficient to prove beyond a reasonable doubt all of the elements of the offense of battery of a police officer while in the custody of the Department of Corrections.

> When reviewing the sufficiency of the evidence on appeal, an appellate court considers whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have determined that the State proved the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983). An appellate court will not second guess credibility determinations beyond this sufficiency evaluation insofar as the trial court or jury fulfills the role of the fact finder in weighing the credibility of witnesses. *See id.* Notwithstanding this standard, the record must indicate that the State satisfied its burden of proving the elements of the crime beyond a reasonable doubt. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367.

*State v. Bowie*, 11-869, p. 8 (La.App. 3 Cir. 12/7/11), __ So.3d __, __.

> In order for the State to obtain a conviction for battery of a police officer, it must prove the elements of the crime beyond a reasonable doubt. Battery of a police officer has three elements: the intentional use of force upon a police officer, without the consent of the officer, when the offender knows or should reasonably know that the victim is a police officer acting within the performance of his duty. LSA-R.S. 14:34.2.

*State v. Ceaser*, 02-3021, p. 3 (La. 10/21/03), 859 So.2d 639, 643. The State was also required to prove that Defendant was "under the jurisdiction and legal custody of the Department of Public Safety and Corrections, or [was] being detained in any jail, prison, [or] correctional facility." La.R.S. 14:34.2(B)(2).

Sergeant Calvin Deason testified that he was employed at LCC. On July 18, 2011, Defendant returned from court and created a disturbance. As a result of Defendant's actions, he was restrained by several deputies and sprayed with mace. Defendant then showered, was given clean clothes, seen by the nurse, and taken to lockdown cell 103. Defendant was still upset, cursing, and belligerent.

Sergeant Deason testified that thirty or forty-five minutes after Defendant was placed in lockdown, he reported to a disturbance in lockdown cell 103. Sergeant Deason used the flap in the door to ask Defendant what was wrong. Defendant had settled down and stated that he wanted to speak to someone with rank, and Sergeant Deason told Defendant to back up against the wall. Sergeant Deason then opened the door, with mace in hand, and took a step inside. Sergeant Deason testified that at that time, Defendant came running at him swinging both hands and hit him. Sergeant Deason testified that he then sprayed Defendant with mace, Defendant was again taken to the shower, given clean clothes, and was seen by the nurse. Sergeant Deason stated that the incident was witnessed by Deputies Miller, Posey, and Malloy.

Sergeant Deason suffered a scratch to his shoulder, and his shirt was torn. He testified that he no longer had the shirt, and no photographs were taken of him. Sergeant Deason further testified that the nurse treated his scratch. He testified that it was policy to check an inmate's fingernails but that he did not recall how long Defendant's fingernails were.

Sergeant Deason testified that he did not think there were any surveillance cameras in the area where his altercation with Defendant occurred. If there were cameras, he did not request that the video be preserved.

Lieutenant Curtis Buckelew testified that Defendant was a DOC inmate, and that he transported Defendant to court in Grant Parish on July 18, 2011. When

3

Defendant returned from court, he was upset. Lieutenant Buckelew also described an altercation that occurred when Defendant was brought back to LCC.

Billie Norman, a nurse at LCC, testified that she treated Sergeant Deason on July 18, 2011. She stated that Sergeant Deason was treated for bleeding from the left forearm due to a tear or cut that was approximately an inch and a half in length. Norman testified that she treated Sergeant Deason immediately after the altercation that occurred in the hallway. Norman testified that she did not recall treating an injury to Sergeant Deason's chest, and, if she had, it would have been in her report.

Norman was further questioned as follows:

Q    Ms. Norman, are you, are you aware that there was a second altercation.

A    There were, there was a second altercation and there was [sic] several altercations with Mr. Mayeux over a period of time. But refreshing my memory on this, I only, I'm going by the records that I wrote on one of the altercations before the two officers were brought to the infirmary.

Norman testified that she did not witness what occurred at the lockdown cell.

Norman testified that she treated a guard involved in the first altercation with Defendant for lacerations that looked like claw marks probably caused by fingernails.

Detective Tracy Clark testified that he was asked to determine if there was any video surveillance in the area where the incident involving Sergeant Deason occurred. Detective Clark was first informed that the area was void of surveillance. However, there was in fact a video camera inside lockdown cell 103. Detective Clark asked for a copy of the video from the date in question. He was subsequently informed that any video had been taped over, if one had existed. On cross-examination, Detective Clark testified that he was informed that there was no video

4

of the events occurring when Defendant was removed from a van upon returning to LCC. He was not told that there was no video in the segregation area. Detective Clark testified that videos are taped over after one month.

Defendant testified that he had a prior conviction for simple burglary. On July 18, 2011, Defendant was a DOC inmate and was incarcerated because his parole had been revoked that day for charges that were later dismissed.

Defendant admitted that he was resisting the commands of Lieutenant Buckelew and that he was cursing and screaming. Defendant testified that he was sprayed with mace, put in the shower, sprayed with mace again, put in the shower again, then escorted to a cell. Defendant testified that he still had wet clothes on when he was brought to the cell. Defendant admitted that he was still cursing in the lockdown cell.

Defendant testified that he was asking for clean clothes when Sergeant Deason opened the door and started spraying him with mace. Defendant denied running at Sergeant Deason and attacking him. Defendant then testified that he did not scratch Sergeant Deason and that he bit his fingernails. Defendant testified that he never hit Sergeant Deason.

In his brief to this court, Defendant contends that the pivotal question is whether the State proved beyond a reasonable doubt that he intentionally used force of violence against Sergeant Deason. Defendant notes that he and Sergeant Deason presented inconsistent testimony, and that the case turned on the credibility call made by the jury.

Defendant contends that Sergeant Deason's testimony conflicts with that of Defendant and Norman. Defendant notes that Norman testified that she treated Sergeant Deason for a small tear on his forearm after a scuffle in the foyer, and Sergeant Deason testified that he was treated following an incident in the

5

lockdown cell for a scratch to his chest/shoulder area. Defendant notes that Sergeant Deason could not explain how the scratch occurred in light of LCC's routine inspection of inmates' fingernails. Defendant argues that the testimony of Norman and Sergeant Deason contain irreconcilable conflicts on a central issue in the case. Defendant notes that, although injury is not necessary for battery, Sergeant Deason testified that he was scratched on the chest when struck inside the cell while Norman testified that he had a slight tear to his forearm from a scuffle in the foyer.

Defendant additionally notes that, although he had been belligerent and calmed down only long enough to ask to speak to someone with authority and there was a flap in the door through which Sergeant Deason could have spoken to him, Sergeant Deason opened the cell door with mace in hand and with three other officers standing just outside the cell. Defendant then argues that what is left unanswered is why a seasoned correctional officer would open the door of the cell of an inmate who had been belligerent. Defendant asserts that the officer would not have done so. Defendant contends that the State failed to prove he had the requisite intent to commit a battery.

Defendant further notes that the physical evidence, including the surveillance video and Sergeant Deason's shirt, was not preserved. Additionally, no pictures were taken of Sergeant Deason's injuries. Furthermore, none of the officers accompanying Sergeant Deason to lockdown cell 103 were called as witnesses at trial. Defendant contends that these items were in the control of the State, and that the State did not produce them. Accordingly, he argues that there is a presumption that the evidence would not have aided the State's case. In support of this argument, Defendant cites La.R.S. 15:432, which provides:

6

A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption attaching to the regularity of judicial proceedings; that the grand jury was legally constituted; that public officers have done their duty; that a relation or subject-matter once established, continues, but not that it pre-existed; that the defendant intended the natural and probable consequence of his act; that the defendant is innocent; that the defendant is sane and responsible for his actions; that the person in the unexplained possession of property recently stolen is the thief; that evidence under the control of a party and not produced by him was not produced because it would not have aided him; that the witnesses have told the truth.

The State notes that there was no video surveillance available to either it or Defendant, that there was inconsistent testimony regarding the location of Sergeant Deason's scratch, and that this issue was placed directly before the jury and aggressively argued by both parties. The State points out that the jury had the opportunity to examine the inconsistencies in the case, the unavailability of a videotape, the testimony of Sergeant Deason as well as Defendant, and Defendant's criminal history. After considering all of the evidence, the jury chose to believe Sergeant Deason. The State asserts that the jury's determination was rational and is entitled to great weight. Furthermore, viewing the evidence in the light most favorable to the State, it was proven beyond a reasonable doubt that Defendant committed the charged offense.

In *State v. Farhood*, 02-490, p. 9 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 224, the fifth circuit stated that:

> The clear language of the statute indicates that the party against whom the presumption is sought must be in control of the witness and fail to call him, in order for the presumption to arise. See, *State in the Interest of J.G.*, 94-194 (La.App. 5 Cir. 7/26/94), 641 So.2d 633, 636. If the witness is equally available to both sides, the presumption does not arise. *State v. Simms*, 381 So.2d 472, 476 (La.1980). In such cases, this Court has found that the defendant was not entitled to an instruction on the State's failure to call a witness. *State v. Jackson*, 527 So.2d 1039, 1043 (La.App. 5 Cir.1988).

7

In *State v. Humphries*, 463 So.2d 804, 807 (La.App. 2 Cir. 1985) (footnote omitted), the second circuit stated that:

> Even if the state's failure to call these witnesses would have entitled defendant to the presumption, she is not entitled to its recognition on appeal because there is no indication in the record, as designated for appeal, that she attempted to get the presumption before the jury. If she could have established the state's control of the witnesses she could have submitted the presumption to the jury by requesting a special instruction. See LSA-C.Cr.P. art. 807; *State v. Arnaud*, 412 So.2d 1013 (La.1982); *State v. Joseph*, 407 So.2d 712 (La.1981). Defendant apparently did not request such a charge. An omission in the jury charges which the trial judge was not requested to supply provides no grounds for complaint on appeal. *State v. Brown*, 242 La. 384, 136 So.2d 394 (1962).

In *State v. Barfield*, 11-515 (La.App. 3 Cir. 11/23/11), 81 So.3d 760, *writ denied*, 11-2818 (La. 4/13/12), 85 So.3d 1246, the defendant was under house arrest and equipped with an ankle bracelet. On May 16, 2010, the defendant left home. Subsequently, police located the ankle bracelet but did not retain the monitoring device's rubber strap, which had been cut through. Additionally, police viewed video from the store where the ankle bracelet had been left and identified the defendant as one of the individuals depicted on the video recording. Police later requested the video footage and were informed that the pertinent footage had been recorded over. The defendant was convicted of simple escape.

On appeal, the defendant alleged that the trial court erred in refusing to include his requested jury instruction that, as a legal presumption, any evidence under the control of the State was not entered into evidence because it would not have aided the State in the prosecution of the case. The defendant alleged that the ankle strap to the monitoring device and video from the store were both within the control of the State. In its ruling, this court stated the following:

> In the instant case, the State had an opportunity, though brief, to preserve the ankle strap and the surveillance video by taking them into its custody; however, as in [*State v.*] *Ballay*[, 99-906 (La.App. 5 Cir. 2/29/00), 757 So.2d 115, *writ denied*, 00-908 (La. 4/20/01), 790 So.2d

13,] and [*State v.*] *Arnaud*[, 412 So.2d 1013 (La.1982)], the State failed to do so. As the State did not have custody or control of the evidence, the presumption set forth in La.R.S. 15:432 did not apply. Thus, the trial court did not err in refusing to include the legal presumption in its jury instructions.

*Id.* at 773.

Based on these cases, Defendant is not entitled to a presumption regarding evidence or witnesses that Defendant asserts were under the control of the State. The State never had control of any video or Sergeant Deason's shirt. Additionally, there is no proof in the record that the witnesses at issue were not equally available to both sides.

The only element of battery of a police officer while in the custody of the Department of Corrections contested by Defendant is whether he intentionally used force or violence against Sergeant Deason. Sergeant Deason testified that Defendant hit him when he entered lockdown cell 103, and Defendant denied this allegation. In *State v. Helou*, 02-2302, p. 9 (La. 10/23/03), 857 So.2d 1024, 1030, the supreme court found that the defendant's act of striking the victim in the nose with his fist constituted the use of force or violence upon the victim.

"The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions, the terms 'intent' and 'intentional' have reference to 'general criminal intent.'" La.R.S. 14:11. Battery of a police officer is defined as "a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty." La.R.S. 14:34.2(A)(1). Battery is defined, in pertinent part, as "the intentional use of force or violence upon the person of another." La.R.S. 14:33. Battery of a police office is a general intent crime. La.R.S. 14:10(2). "In general

9

intent crimes, criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. *State v. Howard*, 94-23 (La.6/3/94), 638 So.2d 216." *State v. Bourque*, 09-1092, p. 7 (La. 4/7/10), 33 So.3d 1092, 1097, *writ denied*, 10-1062 (La. 12/10/10), 51 So.3d 722.

Regardless of discrepancies regarding the location and timing of any injury to Sergeant Deason, the jury heard the testimony of Sergeant Deason, Norman, and Defendant. Sergeant Deason's testimony was not rife with internal contradiction, and the jury chose to believe his testimony. This court will not second-guess that credibility determination. Furthermore, in *State v. Bernard*, 39,579, p. 6 (La.App. 2 Cir. 4/6/05), 899 So.2d 818, 822, the second circuit stated that the testimony of the victim alone was sufficient to support the defendant's conviction of second degree battery.

Viewing the evidence in the light most favorable to the prosecution, the State proved beyond a reasonable doubt that Defendant hit Sergeant Deason. Accordingly, Defendant's conviction for battery of a police officer while in the custody of the Department of Corrections should be affirmed.

### Jury Charges

In his second assignment of error, Defendant contends that the trial court erred in its charges to the jury, arguing that the charges were insufficient to instruct the jury of its duty in this case and permitted it to consider arbitrary factors in its determination of both guilt and credibility of the witnesses, resulting in a violation of his right to due process and to a jury trial.

Defendant alleges that the trial court failed to define the term reasonable doubt, which allowed the jurors to convict him despite possessing a higher degree of doubt than was constitutionally required for acquittal. The following instruction was given to the jury regarding reasonable doubt:

A person accused of a crime is presumed by law to be innocent until each and every element of the crime necessary to constitute guilt is proven beyond a reasonable doubt. The defendant is not required to prove his innocence and therefore, he begins the trial with a clean slate. The burden of proof is upon the State. In considering the evidence you must given [sic] the defendant the benefit of every reasonable doubt arising out of the evidence or of the lack of evidence.

Defendant asserts that the jury was not given sufficient information to properly render a verdict in this case, depriving him of his right to due process and a jury trial. Defendant asserts that this court should not speculate as to whether the jury understood what was meant by reasonable doubt, which would be improper according to *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078 (1993).[1]

Defendant also alleges that the jury was given incorrect and insufficient instructions on how it should weigh the testimony of witnesses. The following instruction was given to the jury:

As the sole judges of the credibility of the witnesses, and the weight their testimony deserves, you should carefully consider the testimony given and the circumstances under which the witnesses testify. In evaluating the testimony of a witness, you may consider the ability and opportunity to observe and to remember the matter about which the witness testified, the manner while testifying, any reasons the witness may have for testifying in favor or against the State, or the defendant, and the extent to which the evidence is supported or contradicted by other evidence. The testimony of a witness may be discredited by showing that the witness may benefit in some way by the defendant's conviction or acquittal, that the witness is biased or prejudiced, or that the witness has some other reasons or motive for not telling the truth. These are circumstances you may consider along with all other evidence in deciding whether or not you believe any or all of the testimony of a witness. **Inconsistencies or discrepancies in the testimony of a witness or between different witnesses[] may or may not cause you to discredit such testimony. Two or more persons witnessing an incident may see or hear it differently.** *Innocent miscollection, like the failure of recollection, is not an*

---

[1]In *Sullivan*, the Supreme Court held that an erroneous jury instruction on the nature of reasonable doubt essentially identical to the one given in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328 (1990), was not subject to harmless error analysis. In *Cage*, the Supreme Court found that an instruction equating reasonable doubt with a "grave uncertainty" and an "actual substantial doubt" and stating that what was required was a "moral certainty" that the defendant was guilty, was constitutionally defective.

**uncommon experience. In weighing the effect of any discrepancy, always consider whether it pertains to a matter of importance or to an unimportant detail and whether it results from innocent error or intention [sic] falsehood.**

(Emphasis added.)

Defendant further alleges that the trial court failed to instruct the jury as to the legal presumption set forth in La.R.S. 15:432, that "evidence under the control of a party and not produced by him was not produced because it would not have aided him." Defendant asserts that most of the cases reported under La.R.S. 15:432 involve jury instructions concerning situations where witnesses were equally available to both parties. Defendant then asserts that the record does not support a conclusion that the defense was made aware of the presence of the other three deputies outside lockdown cell 103 until Sergeant Deason's trial testimony

The State addresses Defendant's claims and also asserts that Defendant failed to raise these issues at trial or make contemporaneous objections.

Reasonable Doubt

Louisiana Code of Criminal Procedure Article 804 provides, in part:

A. In all cases the court shall charge the jury that:

(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt;

(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and

(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.

The court may, but is not required to, define "the presumption of innocence" or "reasonable doubt" or give any other or further charge upon the same than that contained in this article.

12

In *State v. Hart*, 96-697 (La. 3/7/97), 691 So.2d 651, the defendant complained about three of the trial court's charges to the jury at the conclusion of the guilty phase of his trial, including the instruction regarding reasonable doubt. The supreme court noted that defense counsel failed to lodge a contemporaneous objection to any of the trial court's jury instructions and that it would not address the defendant's claim. *Id.* at 660. *See also State v. Guidry*, 94-678 (La.App. 3 Cir. 12/7/94), 647 So.2d 502; *State v. Stewart*, 92-2536 (La.App. 4 Cir. 12/15/94), 648 So.2d 15, *writ denied*, 95-2423 (La. 3/21/97), 691 So.2d 75; *State v. Isaacs*, 95-173 (La.App. 5 Cir. 6/28/95), 658 So.2d 29, *writ denied*, 95-1948 (La. 1/5/96), 666 So.2d 299; *State v. Davis*, 97-1827 (La.App. 4 Cir. 3/10/99), 732 So.2d 79.

In *State v. Smith*, 46,343 (La.App. 2 Cir. 6/22/11), 71 So.3d 485, *writ denied*, 11-1646 (La. 1/13/12), 77 So.3d 950, the defendant argued that the trial court gave an improper jury instruction on the reasonable doubt standard, thereby denying him his right to a fair trial. In its opinion, the second circuit stated that:

> Unless objected to contemporaneously, an irregularity or error in the charge to the jury may not be asserted on appeal. LSA-C.Cr.P. art. 801(C). Although the procedural law set forth in LSA-C.Cr.P. art. 801 states that the failure to assert a timely objection waives the issue on appeal, the jurisprudence has carved out an exception to this rule where such alleged trial errors raise overriding due process considerations. *State v. Williamson*, 389 So.2d 1328 (La.1980); *State v. Lowery*, 33,905 (La.App.2d Cir.2/28/01), 781 So.2d 713, *writ denied*, 2001-1041 (La.2/22/02), 809 So.2d 978. To determine whether such an overriding consideration is implicated, it is necessary to examine the instruction in light of the requirements of the Due Process Clause. In *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994), the United States Supreme Court explained:
>
> > The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's

> burden of proof. Rather, taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.

*Id.* at 487-88.[2]

The trial court is not required to define reasonable doubt. La.Code Crim.P. art. 804; *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239 (1994). Additionally, defense counsel failed to object to the instructions given or the lack thereof. Accordingly, this portion of Defendant's assignment of error was not preserved for appeal.

Weight of Witnesses Testimony

Defense counsel failed to object to the jury instructions. Thus, any claim concerning the instruction about the weight to be given the testimony of witnesses was not preserved for appeal.

Presumption

Based on the ruling in *Humphries*, 463 So.2d 804, that an omission in the jury charges which the trial judge was not requested to supply provides no grounds for complaint on appeal, the trial court's failure to instruct the jury regarding the presumption set forth in La.R.S. 15:432 provides no grounds for complaint, because Defendant did not request such an instruction.

For the reasons asserted herein, this assignment of error presents nothing for review.

***Credit for Time Served***

---

[2]In *Williamson*, 389 So.2d 1328, the jury was given the wrong definition of the charged crime, and the supreme court stated it would address the issue despite the lack of an objection. However, in *State v. Belgard*, 410 So.2d 720, 727 (La.1982), the supreme court found the defendant must have objected to the jury charge at trial to preserve a claim of erroneous instruction on the elements of attempted second degree murder. *See also State v. Thomas*, 427 So.2d 428 (La.1982); *State v. Hongo*, 96-2060 (La. 12/02/97), 706 So.2d 419; *State v. Bishop*, 01-2548 (La. 1/14/03), 835 So.2d 434; *State v. Brown*, 07-388 (La.App. 3 Cir. 10/3/07), 966 So.2d 1138, *writ denied*, 07-2159 (La. 3/28/08), 978 So.2d 304, *and writ denied*, 08-326 (La. 3/28/08), 978 So.2d 312.

In his third assignment of error, Defendant contends that the record is unclear and that the minutes of court are incorrect as to what credit he is to receive for time served prior to the imposition of sentence.

The trial court sentenced Defendant to serve eighteen months at hard labor without benefit of probation, parole, or suspension of sentence and stated the following:

> They commence from the date that you were taken into custody or the date of trial. You had given no credit for no time served priori [sic] to the date of, the date you were taken into custody after the, after the hearing in this matter. . . . The sentence imposed upon you today shall run consecutively to any sentence Mr. Mayeux was serving at the time of the incident. So, that's [sic] basically means, shows that it's going to be, run from the date you bond [sic] out. You bonded out upon the expiration of the revoked sentence and the sentence imposed shall commence upon being taken in custody as I indicated earlier.

The minutes of sentencing state that:

> The defendant was ordered to serve eighteen (18) months at hard labor with the Department of Corrections without the benefit of probation, parole or suspension of sentence. The defendant will not receive credit for time served from date of conviction through sentencing. . . . The sentence is to run consecutive with any other sentence he is currently serving.

Louisiana Code of Criminal Procedure Article 880 provides that:

> A. A defendant shall receive credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence.
>
> B. A defendant shall receive credit only for time in actual custody and only once during any calendar month when consecutive sentences are imposed.
>
> C. No defendant shall receive credit for any time served prior to the commission of the crime.
>
> D. A defendant shall not receive credit for time served under home incarceration.
>
> E. A defendant shall not receive overlapping jail credit, except in the instance of concurrent sentences and then only for time spent in jail on the instant felony.

15

Defendant asserts that both the statement as to credit for time served and as to which sentence his eighteen-month sentence was to run consecutively to are incorrect. Defendant contends that the record does not show that, at the time of sentence, he was serving any sentence. Further, the trial court ordered the sentence to run consecutively to any sentence Defendant was serving at the time of the incident not at the time of sentence. Defendant also asserts that the trial court's explanation limited him from receiving credit for time served on his sentence which was also credited to his sentence served on the parole revocation. Defendant asserts that the minutes of court should be amended to correctly reflect the sentence ordered by the trial court.

The State contends that the calculation of time is not before this court, as there was no objection made in the trial court. Additionally, sentencing calculations may be addressed administratively with the Department of Corrections. The State admits that there is some ambiguity in the sentencing transcript when read with the minutes and agrees that Defendant should be "given credit for all time served spent in actual custody prior to the imposition of sentence, but should only be given credit once for time spent for both the instant case and the prior felony offense."

The minutes of sentencing do not accurately reflect what occurred at the sentencing hearing. We would normally order the trial court to amend the minutes of sentencing to accurately reflect the sentencing transcript; however, the sentencing transcript is unclear as to the trial court's intent regarding credit for time served. Thus, this matter is be remanded to the trial court for clarification of whether Defendant was to be given credit for time served and whether the sentence of eighteen months was to run consecutively with any sentence Defendant was serving at the time of sentence or at the time of the incident.

16

**CONCLUSION**

Defendant's conviction and sentence are affirmed. However, the matter is remanded for clarification of the sentence imposed.

**AFFIRMED AND REMANDED FOR CLARIFICATION OF SENTENCE.**